**Slip Op. 06-94**

## UNITED STATES COURT OF INTERNATIONAL TRADE

POLYETHYLENE RETAIL CARRIER
BAG COMMITTEE, *et al.*,                       :

                                      :

                   Plaintiffs and
                   Defendant-Intervenors,         :

GLOPACK, INC., *et al.,*                       :

                   Plaintiffs and                 :
                   Defendant-Intervenors,

                                        :

GUANGDONG  ESQUEL TEXTILES CO.,

                                        :

                 Plaintiff-Intervenor,          :

                                        :

      v.                                           **Before: Judge Judith M. Barzilay**

                                        :  **Consol. Ct. No. 04-00319**

UNITED STATES,

                                        :

                 Defendant,

                                        :

HANG LUNG PLASTIC MANUFACTORY, LTD.,:

                 Defendant-Intervenor,          :

                                        :

NANTONG HUASHENG PLASTIC
PRODUCTS CO.,                                  :

                 Defendant-Intervenor.          :

## OPINION

[The United States Department of Commerce's Remand Results are Sustained.]

Decided: June 21, 2006

*King & Spalding*, (*Stephen A. Jones*), (*Joseph W. Dorn*)*, Jeffrey B. Denning*, for the plaintiffs *Polyethylene Retail Carrier Bag Committee, et al.*

*Garvey Schubert Barer*, *William E. Perry*, *Ronald M. Wisla*, for the plaintiffs and defendant-intervenors *Glopack, Inc.*, *et al.* and *Hang Lung Plastic Manufactory Ltd.*

*DeKieffer & Horgan, Gregory Stephen Menegaz*, for the plaintiff-intervenor *Guangdong Esquel Textiles Co.*

*Peter D. Keisler*, Assistant Attorney General; *David M. Cohen*, Director; (*Patricia M. McCarthy*), Assistant Director; Civil Division, Commercial Litigation Branch, U.S. Department of Justice *Stefan Shaibani*, (*Sameer Yerawadekar*); *Marisa Beth Goldstein*, *Peter J. Kaldes*, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for the defendant.

*White & Case, LLP*, *Adams Chi-Peng Lee*, *Frank H. Morgan*, *Kelly Alice Slater*, *Walter J. Spak*, for the defendant-intervenor *Nantong Hausheng Plastic Products Co.*

**BARZILAY, JUDGE:**   This consolidated case concerns a challenge by the plaintiffs to the U.S. Department of Commerce's ("Commerce") determination in the antidumping investigation *Final Determination of Sales at Less Than Fair Value: Polyethylene Retail Carrier Bags from the People's Republic of China*, 69 Fed. Reg. 34,125 (June 18, 2004), *amended*, 69 Fed. Reg. 42,419 (July 15, 2004). The court remanded Commerce's determination on one issue concerning the electricity used by one of the companies under review. Commerce has now issued its remand determination.

### THE REMAND RESULTS

The court remanded Commerce's calculation of electricity usage for Hang Lung Plastic Manufactory Ltd. ("Hang Lung"), a Chinese manufacturer and exporter to the United States of polyethylene retail carrier bags ("PRCBs") and a mandatory respondent in the underlying investigation, because the court found that Commerce's explanation of its calculation was

unclear. *See Polyethylene Retail Carrier Bag Comm. v. United States*, 29 CIT __, Slip Op. 05-157 at 8-10 (Dec. 13, 2005) (hereinafter "*PRCB I*").[1] Commerce was instructed to explain its calculation and reconcile seeming inconsistencies between its *Analysis for the Final Determination of PRCBs from the People's Republic of China: Hang Lung*, June 9, 2004, ("*Final Analysis Memorandum*") and the information contained in Commerce's September 13, 2005, *Motion for Leave to Clarify Commerce's Electricity Calculation for Hang Lung* ("*Motion to Clarify*"). On February 13, 2006, Commerce issued its *Results of Redetermination on Remand* ("*Remand Determination*"). Plaintiffs Polyethylene Retail Carrier Bag Committee and its individual members, Vanguard Plastics, Inc., Hilex Poly Co., LLC, and Superbag Corp. (collectively "PRCB Committee Plaintiffs"), filed *Comments Regarding Commerce's Determination on Remand* ("Pls.' Comments"). Commerce then asked that the court allow it to respond to those comments, and the court granted that request.

In its *Remand Determination*, Commerce addressed two questions: 1) how it allocated electricity and 2) the seeming inconsistency between the *Final Analysis Memorandum* and the *Motion to Clarify*. Commerce explained that it chose the total electricity used by Hang Lung in production of *all* plastic bags, regardless of destination, as the amount of electricity in kilowatt-hours (kwh) used during the period of investigation. *See Remand Determination* at 4. Commerce then "applied that total electricity to only Hang Lung's U.S. sales by allocating the total kwh electricity used over the total extruded resin by the weight and concentrate Hang Lung used to produce the bags it sold to the United States." *Id.* Because it did not know the total weight of extruded resin and concentrate used in Hang Lung's U.S. sales, Commerce merged

---

[1]Familiarity with *PRCB I* is presumed.

Hang Lung's factors-of-production database with its U.S. sales database. As stated in its *Final Analysis Memorandum*, Commerce allocated total printing electricity usage only to printed bags sold in the United States because only those bags would incur electricity usage for printing. *Id.* at 5.

Regarding the court's query that Commerce appeared to have presented two inconsistent positions between the *Motion to Clarify* and the *Final Analysis Memorandum*, Commerce responded that "[the] *Motion to Clarify* explains *how* [it] *arrived at the total kwh of electricity to be allocated . . .* rather than the general methodology [it] used to allocate that figure to Hang Lung's U.S. sales." *Remand Determination* at 6. The *Final Analysis Memorandum* describes how Commerce applied the total kwh of electricity to individual U.S. sales using the U.S. factors-of-production database, which Commerce "created by merging Hang Lung's U.S. sales database with its factors of production database." *Remand Determination* at 6. Therefore, Commerce explained, the two positions are not inconsistent.

In their comments on the *Remand Determination*, PRCB Committee Plaintiffs present three key arguments: 1) that Commerce's electricity calculation is not supported by record evidence; 2) that "even assuming, *arguendo*, that Commerce's interpretation is supported by the record, the electricity calculation is still not adverse to Hang Lung because it simply reallocates the same amount of electricity that Hang Lung would have allocated had it cooperated with the investigation"; and 3) that Commerce should not have used Hang Lung's Verification Exhibit 11 (C.R. 164) as it is unreliable. For these reasons, they desire that the court again remand the case as not supported by substantial evidence and otherwise contrary to law. Pls.' Comments at 3, 9.

**JURISDICTION AND STANDARD OF REVIEW**

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) (2000). In accordance with 19 U.S.C. § 1516a(b)(1)(B), the court "must sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with the law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)) (quotations omitted). "[T]he court affirms Commerce's factual determinations so long as they are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusions." *Olympia Indus., Inc. v. United States*, 22 CIT 387, 389, 7 F. Supp. 2d 997, 1000 (1998) (citing *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1563 (Fed. Cir. 1984)). The court may not re-weigh the evidence or substitute its own judgment for that of the agency. *See Granges Metallverken AB v. United States*, 13 CIT 471, 474-75, 716 F. Supp. 17, 21 (1989).

**DISCUSSION**

When Commerce "determines that it is unable to verify the respondent's submission, it may substitute for the information submitted by the respondents, facts otherwise available." *Chia Far Indus. Factory Co. v. United States*, 28 CIT __, __, 343 F. Supp. 2d 1344, 1362 (2004) (citing 19 U.S.C. § 1677e(a)(2)(A), (D)). The relevant statute provides:

> If the administering authority or the Commission (as the case may be) finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority or the

Commission, the administering authority or the Commission (as the case may be), in reaching the applicable determination under this subtitle, *may use an inference that is adverse* to the interests of that party in selecting from among the facts otherwise available. Such adverse inference may include reliance on information derived from –
(1) the petition,
(2) a final determination in the investigation under this subtitle,
(3) any previous review under section 1675 of this title or determination under section 1675b of this title, or
(4) any other information placed on the record.

19 U.S.C. § 1677e(b) (emphasis added). Thus, Commerce is authorized to adopt an adverse inference when selecting facts otherwise available, *see Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1383-84 (Fed. Cir. 2003), and it is within Commerce's discretion to choose which adverse facts to apply, as long as such facts do not lead to "punitive, aberrational, or uncorroborated margins." *F.LLI De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000); *see Shangahai Taoen Int'l Trading Co. v. United States*, 29 CIT __, __, 360 F. Supp. 2d 1339, 1346 (2005).

The parties concur with Commerce's decision that Hang Lung was uncooperative and that Commerce may apply partial adverse facts available to determine Hang Lung's per unit electricity consumption rates. Following the remand, Plaintiffs claim that Commerce's calculation of total electricity consumption for Hang Lung is not supported by substantial evidence primarily because Commerce relied on the data provided in Hang Lung's Verification Exhibit 11 as the basis for its calculation. Pls.' Comments at 4. They argue that it is unclear what Exhibit 11 represents and that Commerce's explanation is based on its interpretation of the exhibit and not its face value. Specifically, for example, Plaintiffs assert that "[t]he second page of the exhibit appears to be a worksheet for the data relating to the month of December, but . . .

contains no information indicating that this data relates to the production of all bags."  Pls.'

Comments at 5.  In addition, Plaintiffs maintain that Commerce's explanation, even if consistent

and substantiated by the record, is not adverse and is therefore not in accordance with law.  *See*

Pls.' Comments at 6.  Plaintiffs claim that the electricity amounts provided in Exhibit 11 are the

amounts Hang Lung originally reported.  Pls.' Comments at 6.

### 1.  Commerce's Methodology

Commerce in this case chose to apply adverse facts available and stated that it allocated

Hang Lung's total verified electricity usage to Hang Lung's reported U.S. sales.  *See Issues and*

*Decision Mem. for the Investigation of PRCBs from the People's Republic of China* (Dep't of

Comm. June 9, 2004) at 64.  Commerce verifiers considered the worksheets Hang Lung

presented to demonstrate how it attributed electricity usage to each product.  *Hang Lung's*

*Verification Report* at 7.  The verifiers were able to "tie[] the electricity usage for each

department from the worksheets to meter readings that Hang Lung kept in the ordinary course of

business." *Hang Lung's Verification Report* at 7.  "[F]or some printed products, [however], . . .

Hang Lung did not include the printing electricity factor."  *Hang Lung's Verification Report* at 8.

Based on these data and other information collected during Hang Lung's factory tour, the

verifiers found that they "were unable to tie the electricity usage from the consumption charts to

the [factors of production] database."  *Hang Lung's Verification Report* at 8.  They did, however,

find that the total electricity consumption numbers in Exhibit 11 matched the numbers from

Hang Lung's worksheets, which do not segregate input consumption by product destination.  *See*

*Hang Lung's Verification Report* at 7-8.

After reviewing Commerce's explanation regarding its calculation of the total electricity consumed during the period of review and its allocation, the court finds the methodology employed sufficiently adverse. Plaintiffs' challenge to Commerce's specific calculation, while not entirely amiss, does not overcome the deference this Court grants to Commerce's methodology. *See, e.g.*, *Olympia Indus.*, 22 CIT at 389, 7 F. Supp. 2d at 1000.

## 2. Commerce's Verification

"Congress has afforded Commerce a degree of latitude in implementing its verification procedures." *PPG Indus., Inc. v. United States*, 15 CIT 615, 620, 781 F. Supp. 781, 787 (1991) (citing *Kerr-McGee Chem. Corp. v. United States*, 14 CIT 344, 362, 739 F. Supp. 613, 628 (1990)); *see* 19 C.F.R. § 351.307(b) (requiring Commerce to verify factual information upon which the Secretary relies). The selection of a particular verification methodology is within Commerce's sound discretion, and if supported by substantial evidence on the record, it will be sustained by the court. *PPG Indus.*, 15 CIT at 620, 781 F. Supp. at 787 (citing *Hercules, Inc. v. United States*, 11 CIT 710, 726, 673 F. Supp. 454, 469 (1987)). In their comments, Plaintiffs challenge Commerce's calculation as based on unverified electricity data. They claim that while Commerce stated that it allocated the total electricity rate used by Hang Lung in production of all bags, regardless of destination, these data "are not the gross amounts of electricity taken directly from the meters in each department. Rather, they are net figures derived by Hang Lung by deducting amounts for electricity usage for factory overhead items such as lighting and fans." *See* Pls.' Comments at 9. In a related argument, Plaintiffs claim that Commerce's reliance on the

data provided in Hang Lung's Verification Exhibit 11 was unfounded. Aside from these claims, Plaintiffs do not point to any record evidence showing that Commerce verifiers did not consider and evaluate all available data.

Plaintiffs' argument that Commerce's explanation relies solely on its interpretation of the exhibit and not on information provided on the face of the exhibit itself requires second-guessing the work of Commerce verifiers under their regulatory mandate. *See PPG Indus.*, 15 CIT at 620, 781 F. Supp. at 787. Otherwise, Plaintiffs present no evidence that Hang Lung's Verification Exhibit 11 should be discredited for any reason. *Cf. Tung Fong Indus. Co. v. United States*, 28 CIT __, __, 318 F. Supp. 2d 1321, 1334-36 (2004) (finding that evidence did not support Commerce's finding that manufacturer withheld cost allocation information and concluding that Commerce verifiers "offered no justification or other explanation for their reliance on already discredited . . . data as a basis for attempting to discredit other data."). Without any showing that the worksheets provided by Hang Lung are somehow inaccurate or otherwise unacceptable, Plaintiffs fail to show that Commerce's verification process was not supported by substantial evidence.

CONCLUSION

Commerce's remand determination with respect to its calculation of Hang Lung's electricity usage is AFFIRMED.

June 21, 2006                                         /s/ Judith M. Barzilay
_____          _____
New York, NY                                    Judith M. Barzilay, Judge