The TORRINGTON COMPANY, Plaintiff,

Federal–Mogul Corporation, Plaintiff–Intervenor,

v.

UNITED STATES, Defendant,

SKF USA Inc. and SKF Sverige AB, Defendant–Intervenors.

No. 91–08–00566.

United States Court of International Trade.

Sept. 8, 1993.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Geert De Prest, Margaret E.O. Edozien, Wesley K. Caine, Jimmy V. Reyna, Myron A. Brilliant, Robert A. Weaver, David Scott Nance and Amy S. Dwyer, for plaintiff The Torrington Company.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley, Joseph A. Perna, V and Larry Hampel, for plaintiff-intervenor Federal–Mogul Corp.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Velta A. Melnbrencis and Jane E. Meehan, of counsel: John D. McInerny, Acting Deputy Chief Counsel for Import Admin., Dean A. Pinkert and Stephen J. Claeys, Attorney–Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, for defendant.

Howrey & Simon, Herbert C. Shelley, Scott A. Scheele, Alice A. Kipel, Juliana M. Cofrancesco and Thomas J. Trendl, for defendant-intervenors SKF USA Inc. and SKF Sverige AB.

## OPINION

TSOUCALAS, Judge:

Plaintiff, The Torrington Company ("Torrington"), commenced this action to challenge certain aspects of the Department of Commerce, International Trade Administration's ("ITA") final results in the first administrative review of imports of antifriction bearings from Sweden. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Sweden; Final Results of Antidumping Duty Administrative Reviews*

("*Final Results*"), 56 Fed.Reg. 31,762 (1991). Substantive issues raised by the parties in the underlying administrative proceeding were addressed by the ITA in the issues appendix to *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review* ("*Issues Appendix*"), 56 Fed.Reg. 31,692 (1991).

### Background

On June 11, 1990, the ITA initiated an administrative review of imports of ball bearings, cylindrical roller bearings and parts thereof from Sweden. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom Initiation of Antidumping Administrative Reviews,* 55 Fed.Reg. 23,575 (1990).

On March 15, 1991, the ITA published its preliminary determination in the administrative review. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof from Sweden; Preliminary Results of Antidumping Duty Administrative Reviews,* 56 Fed.Reg. 11,193 (1991).

On July 11, 1991, the ITA published its Final Results in this proceeding. *Final Results,* 56 Fed.Reg. 31,762.

Torrington moves pursuant to Rule 56.1 of the Rules of this Court for summary judgment on the agency record alleging that the following actions by the ITA were unsupported by substantial evidence on the administrative record and not in accordance with law: the ITA's (1) use of a methodology for adjusting United States price ("USP") and foreign market value ("FMV") for Sweden's value added tax ("VAT") that granted a circumstance of sale ("COS") adjustment to FMV to achieve tax neutrality; (2) method of calculating cash deposit rates for estimated duties; (3) in regard to exporter's sales price ("ESP") transactions, allowance of an adjustment to FMV for inventory carrying costs; (4) treatment of SKF USA Inc. and SKF Sverige AB's ("SKF") U.S. movement expenses; and (5) treatment of SKF's home

market billing adjustments. *Memorandum in Support of Plaintiff The Torrington Company's Motion for Judgment on the Agency Record ("Torrington's Memorandum")* at 6–35.

### Discussion

This Court's jurisdiction over this matter is derived from 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

A final determination by the ITA in an administrative proceeding will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

1. *Circumstance of Sale Adjustment to FMV for Value Added Tax*

■ Torrington challenges the ITA's use of a methodology for adjusting USP and FMV for Sweden's VAT that granted a COS adjustment to FMV to achieve tax neutrality. *Torrington's Memorandum* at 13–16.

Defendant argues that its actions were supported by substantial evidence on the administrative record and otherwise in accordance with law. *Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment Upon the Agency Record ("Defendant's Memorandum")* at 10–37.

For a more detailed discussion of Torrington and defendant's arguments on this issue, see this Court's decision in *Torrington Co. v. United States,* 17 CIT ——, ——, 818 F.Supp. 1563, 1567–69 (1993).

SKF essentially agrees with the defendant's arguments on this issue. *Opposition of SKF USA Inc. and SKF Sverige AB to Torrington's Motion for Judgment on the Agency Record ("SKF's Opposition")* at 9–12.

This Court has fully addressed these arguments and adheres to its decision on this issue in *Federal–Mogul Corp. v. United States*, 17 CIT ——, ——, 813 F.Supp. 856, 863–65 (1993). This Court remands this issue to the ITA to allow the ITA to add the full amount of VAT paid on home market sales to FMV without adjustment.

### 2. *Calculation of Cash Deposit Rates*

■ In this administrative review, the ITA used two different methodologies for the actual calculation of dumping margins in cases where ESP sales were used: one for assessing duties on entries covered by the review, and the other for setting the cash deposit rate on future entries of the subject merchandise. *Final Results*, 56 Fed.Reg. at 31,-764–65; *Issues Appendix*, 56 Fed.Reg. at 31,698–702. To calculate the assessment rate for ESP sales, the ITA "divide[d] the total PUDD [potential uncollected dumping duties—calculated as the total difference between foreign market value and U.S. price for an exporter] for the reviewed sales by the *total entered value* of those reviewed sales. . . ." *Issues Appendix*, 56 Fed.Reg. at 31,698–99 (emphasis added). To calculate the estimated cash deposit rate for ESP sales, the ITA "divided the total PUDD for each exporter by the *total net U.S. price* for that exporter's sales. . . ." *Id.* at 31,699 (emphasis added).

Torrington argues that the ITA's use of a methodology which results in an estimated cash deposit rate different from the assessment duty rate was unsupported by substantial evidence on the record and not in accordance with law. *Torrington's Memorandum* at 30–35.

Defendant argues that its actions were supported by substantial evidence on the administrative record and otherwise in accordance with law. *Defendant's Memorandum* at 48–55. In addition, defendant argues that this issue is moot because of the publication of superseding cash deposit rates in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews*, 57 Fed.Reg. 28,360 (1992). *Defendant's Memorandum* at 45–48.

For a more detailed discussion of Torrington and defendant's arguments on this issue, see this Court's decision in *Torrington Co.*, 17 CIT at ——, 818 F.Supp. at 1569.

SKF essentially agrees with the defendant's arguments on this issue. *SKF's Opposition* at 17–21.

The Court agrees with the defendant that this issue is now moot. However, the Court directs the defendant to this Court's decision on this issue in *Federal–Mogul*, 17 CIT at ——, 813 F.Supp. at 866–68.

### 3. *Inventory Carrying Costs*

■ In the Final Results of this administrative review the ITA correctly adjusted ESP for imputed inventory carrying costs pursuant to 19 U.S.C. § 1677a(e)(2) (1988). Torrington does not challenge this adjustment.

Pursuant to its new administrative practice, the ITA also made a corresponding adjustment to FMV for imputed inventory carrying costs when comparing ESP sales to FMV sales.

Torrington objects to this adjustment by the ITA to FMV for imputed inventory carrying costs. *Torrington's Memorandum* at 6–12.

For a detailed discussion of Torrington and defendant's arguments on this issue, see this Court's decision in *Torrington Co.*, 17 CIT at ——, 818 F.Supp. at 1574–77.

SKF essentially agrees with the defendant's arguments on this issue. *SKF's Opposition* at 5–9.

This Court adheres to its decision on this issue in *Torrington Co.*, 17 CIT at ——, 818 F.Supp. at 1576–77, and finds that the ITA's adjustment to FMV for imputed inventory carrying costs pursuant to 19 C.F.R. § 353.-56(b)(2) (1991) was a reasonable exercise of the ITA's discretion in implementing the antidumping duty statute and is affirmed.

### 4. *U.S. Movement Expenses*

■ In the antidumping duty questionnaire sent to SKF, the ITA requested SKF to report all movement expenses associated

with U.S. sales including ocean freight, marine insurance, U.S. inland freight and U.S. brokerage and handling. Administrative Record Sweden Public Document Number ("AR Swe.Pub.Doc. No.") 4. ITA requested that SKF report these expenses on a transaction-specific basis if possible. *Id.*

In its questionnaire response, SKF reported that it was unable to provide the requested information on a transaction-specific basis. AR Swe.Pub.Doc. No. 19. As an alternative, SKF calculated a monthly average for each type of expense. SKF took the total for each expense from eight chosen sample months and divided this total by the total weight shipped in those months. The result of these calculations were applied on a per-unit basis to all U.S. sales. *Id.*

During the course of the ITA's verification of SKF's U.S. sales response, the ITA successfully verified SKF's reporting methodology and calculation of U.S. movement expenses. Verification Report of SKF–USA at 5 (Supplemental Administrative Record Submission—August 26, 1993).

Torrington argues that the ITA abdicated its responsibility to make a determination of what would constitute a representative sample by simply accepting SKF's reporting methodology for U.S. movement expenses. *Torrington's Memorandum* at 20–21.

Torrington argues that 19 U.S.C. § 1677f–1(a)(1), (b) (1988), which authorizes the ITA to use generally recognized sampling techniques, requires that the ITA, not respondents, select any samples to be used in calculating dumping margins.[1] Torrington argues that the ITA did not select SKF's samples, SKF selected them itself. In addition, Torrington alleges that the ITA only verified SKF's calculations but not the underlying reporting methodology selected by SKF. *Torrington's Memorandum* at 22–24. Tor-

rington argues that evidence on the administrative record does not support a finding that SKF's reporting methodology was representative of the transactions under review. *Id.*

Defendant argues that Torrington has failed to point to any evidence that the samples chosen by SKF, and verified and accepted by the ITA, were unrepresentative of SKF's U.S. movement expenses. Defendant argues that the ITA is granted broad discretion in its choice of verification methods and that the ITA verified SKF's reported U.S. movement charges. *PPG Indus., Inc. v. United States,* 15 CIT 615, 620, 781 F.Supp. 781, 787 (1991); *Kerr–McGee Chem. Corp. v. United States,* 14 CIT 344, 362, 739 F.Supp. 613, 628 (1990). Defendant argues that if the ITA is satisfied that the information submitted by SKF is complete and has been adequately verified, the ITA is under no obligation to obtain more information simply because Torrington is not satisfied with SKF's response. *Defendant's Memorandum* at 39–41.

SKF agrees with defendant's arguments on this issue and emphasizes that the ITA spent a substantial amount of time during the verification of SKF's U.S. sales response specifically verifying SKF's reported U.S. movement expenses and found no problems with SKF's submission. *SKF's Opposition* at 12–15. SKF also points out that it has been the ITA's administrative practice to accept allocation of expenses which cannot be reported on a transaction-specific basis where the reporting methodology was reasonable and the information submitted to the ITA was verified. *Id.* at 14.

It is obvious that a respondent is in the best position to know what kind of information can be generated by its record-keeping

---

1. 19 U.S.C. § 1677f–1 states in pertinent part:
**§ 1677f–1. Sampling and averaging**
**(a) In general**
   For the purpose of determining United States price or foreign market value under sections 1677a and 1677b of this title, and for purposes of carrying out annual reviews under section 1675 of this title, the administering authority may—
      (1) use averaging or generally recognized sampling techniques whenever a significant

volume of sales is involved or a significant number of adjustments to prices is required, and
   . . . .
**(b) Selection of samples and averages**
   The authority to select appropriate samples and averages shall rest exclusively with the administering authority; but such samples and averages shall be representative of the transactions under investigation.

system. It also follows that the respondent is also in the best position to suggest sampling methodologies to the ITA in situations where sampling is necessary due to the respondent's record-keeping system or the complexity of the proceeding.

■ While it is true that 19 U.S.C. § 1677f–1(b) grants the ITA sole authority to select samples, this Court finds nothing wrong with the ITA's acceptance of a respondent's proposed sampling methodology as long as that methodology is reasonable and, based on information in the administrative record, is likely to be representative of the underlying information. This is especially true in situations where the ITA was able to verify the information submitted. The key issue is that the ITA must closely examine the proposed methodology and make a determination that it is reasonable and representative. ITA cannot simply accept a respondent's methodology without investigation. As long as the ITA has made this determination, it is in compliance with 19 U.S.C. § 1677f–1.

In this case, the ITA was able to verify both SKF's reporting methodology and a randomly selected sample of its actual calculation of U.S. movement expenses. Torrington presents no evidence that the samples proposed by SKF and accepted by the ITA were unrepresentative. Therefore, this Court affirms the ITA's acceptance of SKF's reporting methodology and calculations of U.S. movement expenses.

### 5. *Home Market Billing Adjustments*

■ SKF reported credits or debits to home market invoices on a transaction-specific basis and claimed them as billing adjustments to FMV. AR Swe.Pub.Doc. No. 22. The ITA requested that SKF provide a more detailed explanation of why these billing adjustments were not rebates for which no adjustment to FMV should be made. AR Swe.Pub.Doc. No. 38. SKF responded that all reported billing adjustments were transaction-specific invoice corrections. AR Swe. Pub.Doc. No. 48.

ITA verified SKF's claimed billing adjustments and allowed an adjustment to FMV stating:

On a line-item basis, as recorded on selected invoices, we verified the nature and accuracy of the billing adjustments claimed by all SKF companies. We have determined that these billing adjustments cannot be construed as rebates, because SKF did not know, prior to the sale, whether adjustments would be necessary, or in what amounts. Therefore, for these final results, we have continued to accept all sale-by-sale claims for billing adjustments and have added them to USP or FMV, where appropriate.

*Issues˜Appendix,* 56 Fed.Reg. at 31,726.

Torrington argues that information on the administrative record calls into question whether SKF's claimed billing adjustments were actually rebates for which no adjustment to FMV should be made. Torrington argues that it raised its concerns with the ITA during the course of the administrative review. Torrington acknowledges that the ITA verified SKF's billing adjustments, but claims that the verification conducted by the ITA was inadequate to resolve Torrington's outstanding concerns. *Torrington's Memorandum* at 25–29.

Torrington argues that *Smith Corona Group v. United States,* 15 CIT 355, 364–67, 771 F.Supp. 389, 397–400 (1991), stands for the proposition that the ITA's verification methodology must resolve all outstanding factual issues raised by an interested party. Torrington argues that the ITA's verification methodology of examining SKF's source documentation for selected transactions did not resolve the specific factual issues raised by Torrington in regard to SKF's billing adjustments. Therefore, Torrington requests this Court to remand this issue to the ITA to correctly verify SKF's billing adjustments or to have the ITA deny SKF an adjustment to FMV for its billing adjustments. *Torrington's Memorandum* at 29.

Defendant argues that Congress has afforded the ITA broad discretion in determining how to conduct verifications. *PPG Indus.,* 15 CIT at 620, 781 F.Supp. at 787;

*Kerr–McGee,* 14 CIT at 362, 739 F.Supp. at 628; *Defendant's Memorandum* at 43.

During verification for this review, the ITA traced the amounts of SKF's billing adjustments for selected home market sales through SKF's source documents. ITA determined that these billing adjustments were not rebates because SKF did not know at the time of the sale whether a billing adjustment would be required for any given sale or the amount of such an adjustment if one was required. ITA found no discrepancies in SKF's reported billing adjustments. *Defendant's Memorandum* at 42–43.

In addition, defendant argues that Torrington's reliance on *Smith Corona,* 15 CIT at 364–67, 771 F.Supp. at 397–400, is misplaced because in that case the ITA made no attempt to verify the information questioned by the petitioner. In this case, the ITA fully verified SKF's billing adjustments and established their accuracy. *Defendant's Memorandum* at 44–45.

SKF agrees with defendant's arguments on this issue. *SKF's Opposition* at 15–17.

Torrington replies to defendant and SKF's arguments by arguing that post-sale price rebates not contemplated by a respondent at the time of sale are precisely the type of adjustments which are not proper adjustments to FMV. *Reply of The Torrington Company, Plaintiff, to Responses of Defendant and Defendant–Intervenors to Torrington's Motion for Judgment Pursuant to Rule 56.1* at 10–12.

This court has stated that "[t]he decision to select a particular [verification] methodology rests solely within Commerce's sound discretion. As long as there is 'substantial evidence on the record' to support the choice, the Court will sustain the methodology chosen by Commerce." *Hercules, Inc. v. United States,* 11 CIT 710, 726, 673 F.Supp. 454, 469 (1987). In addition, this court has stated that when the ITA finds a respondent's "information to be complete and its explanations sound, it may need no further information." *Kerr–McGee,* 14 CIT at 362, 739 F.Supp. at 628.

In this case, the Court has examined the confidential administrative record and the ITA's verification reports and finds that there is more than sufficient evidence to support the ITA's verification methodology in regard to SKF's billing adjustments and the accuracy of those reported adjustments. The administrative record supports the ITA's conclusion that these billing adjustments were not rebates. AR Swe.Confidential Doc. Nos. 18, 26; AR Swe.Pub.Doc. No. 57. Torrington's reliance on *Smith Corona,* 15 CIT at 364–67, 771 F.Supp. at 397–400, is misplaced because in this case the ITA fully verified the information it relied upon. Therefore, the ITA's adjustment of FMV for SKF's reported home market billing adjustments is affirmed.

## Conclusion

In accordance with the foregoing opinion, this case is remanded to the ITA to add the full amount of VAT paid on each sale in the home market to FMV without adjustment. ITA's determination is affirmed in all other respects. Remand results are due within thirty (30) days of the date this opinion is entered. Any comments or responses by the parties to the remand results are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.

## ORDER

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that plaintiff's motion for judgment on the agency record is granted in part and this case is remanded to the Department of Commerce, International Trade Administration ("ITA"), to add the full amount of VAT paid on each sale in the home market to foreign market value without adjustment; and it is further

**ORDERED** that the ITA's determination is affirmed in all other respects; and it is further

**ORDERED** that remand results are due within thirty (30) days of the date this opinion is entered, comments or responses by the parties to the remand results are due within thirty (30) days thereafter and any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.